FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 1 9 2009 ★

BROOKLYN OFFICE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

DEAN BLECHMAN

              Plaintiff,

   - against -

IDEAL HEALTH, INC., TODD STANWOOD, SCOTT
STANWOOD, LOUIS DECAPRIO, INFOBROKER,
INC., UIX, LLC, and UNITED INFOXCHANGE, LLC,

              Defendants.

**09**    **2617**

Civil Action - Law

**SEYBERT. J**

**LINDSAY, M.J.**

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441

TO THE CLERK OF THE ABOVE-CAPTIONED COURT:

    Please take notice that Defendants, Ideal Health, Inc. ("Ideal"); Todd Stanwood, Scott Stanwood, Louis DeCaprio ("the Individual Defendants"); Infobroker, Inc. ("Infobroker"); UIX, LLC ("UIX"); and United InfoXchange, LLC ("United") (collectively referred to as "Defendants"), by and through their undersigned attorneys, Cozen O'Connor, remove the above-captioned action from the Supreme Court of the State of New York, County of Suffolk, to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. §§1332, 1441 and 1446. As the basis and support for such removal, Defendants state as follows:

    1.    On or about May 20, 2009, Plaintiff filed a Complaint in the Supreme Court of the State of New York, County of Suffolk, docketed as <u>Dean Blechman v. Ideal Health, Inc., et al.</u>, Index No. 09-19409. Plaintiff claims to have served defendants on May 21, 2009. True and correct copies of the Summons and Complaint are attached hereto and marked Exhibit A.

    2.    As averred in his verified Complaint, plaintiff is an individual who, at all times relevant hereto, resided in Setauket, New York. He was, at the time of the filing of the Complaint, and is now, a citizen of the State of New York.

3.     Defendant Ideal is a business corporation organized and existing under the laws of the State of Nevada.  It maintains its principal business address at 12 Kent Way, Byfield, Massachusetts 01922 and is registered to do business in Massachusetts as a foreign corporation.

4.     Defendant DeCaprio is an adult individual a citizen and resident of the Commonwealth of Massachusetts.

5.     Defendant Scott Stanwood is an adult individual and a citizen and resident of the Commonwealth of Massachusetts.

6.     Defendant Todd Stanwood is an adult individual and a citizen and resident of the Commonwealth of Massachusetts.

7.     Defendant Infobroker is a business corporation organized and existing under the laws of the Commonwealth of Massachusetts and maintains its principal place of business at 4 Illsley Hill Road, West Newbury, MA 01985.

8.     Defendant UIX is a limited liability company organized and existing under the laws of the State of Nevada and maintains its principal place of business at 12 Kent Way, Byfield, MA 01922.  The Individual Defendants are the sole members of UIX.

9.     UIX is the surviving entity of a merger between Defendant United and UIX. Defendant United therefore no longer exists independent of its merger into UIX.  In any event, prior to the merger, United was a limited liability company organized and existing under the laws of the State of New Hampshire.  The Individual Defendants were the sole members of United.

10.     The United States District Court for the Eastern District of New York has original jurisdiction over this case where the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.  See 28 U.S.C. §1332(a).

10.     Complete diversity exists because the citizenship of Plaintiff is completely diverse from the citizenship of all Defendants.

11.     The value of the relief Plaintiff seeks, including monetary damages, exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

12.     Accordingly, the Suffolk County, New York action is one over which this Court has original jurisdiction under the provisions of 28 U.S.C. §1332, and is one which may be removed under 28 U.S.C. §1441(a) and (b), because it is a civil action in which the amount of controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between citizens of different states.

13.     This Notice is timely brought by Defendants within thirty days of the service of the Complaint upon the first Defendant.  All Defendants join in this Notice of Removal.

14.     Written notice of the filing of this Notice of Removal will be given to all parties, and a true and correct copy will be filed with the Clerk of Court, Supreme Court of the State of New York, County of Suffolk, pursuant to 28 U.S.C. §1446(d).

Respectfully submitted,

COZEN O'CONNOR

By: _____

Dave Kissoon (I.D. No. dk8100)
dkissoon@cozen.com

45 Broadway, 16th Floor
New York, NY  10006
(212) 509-9400

Attorneys for Defendants

Dated: June 19, 2009

3

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the within Notice

of Removal of Action Under 28 U.S.C. §1441 was served on this 19th day of June 2009 by First

Class United States Mail, upon all parties listed below:

Erica B. Garay, Esquire
Meyer, Suozzi, English & Klein, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(Attorneys for Plaintiff)

_____
Dave Kissoon, Esquire

4

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------X

DEAN BLECHMAN,

                                        Plaintiff,

                    - against -

IDEAL HEALTH, INC., TODD STANWOOD, SCOTT
STANWOOD, LOUIS DECAPRIO, INFOBROKER,
INC., UIX, LLC, and UNITED INFOXCHANGE, LLC,

                                        Defendants.
-----------------------------------------------------------------X

**SUMMONS**

Index No. 09 - 19409
Date Purchased: 5/20/09

FILED
MAY 20 2009

Plaintiff designates Suffolk County
as the place of trial

The basis of the venue designated is:
Plaintiff's residence.

TO THE ABOVE NAMED DEFENDANTS:

        You are hereby summoned to answer the complaint in this action and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the plaintiff's attorney within twenty (20) days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear to answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: Garden City, New York
       May 19, 2009

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____
     Erica B. Garay
     *Attorneys for Plaintiff*
     990 Stewart Avenue - Suite 300
     P.O. Box 9194
     Garden City, New York 11530-9194
     (516) 741-6565

A TRUE COPY ATTEST

**PROCESS** SERVER

MAY 2 1 2009

A disinterested persut.

TO:  **Ideal Health, Inc.,** 12 Kent Way, Byfield, MA  01922

     **Todd Stanwood**
     4 Illsley Hill Road, West Newbury, MA  01985 *or* 12 Kent Way, Byfield, MA 01922

     **Scott Stanwood**
     4 Illsley Hill Road, West Newbury, MA  01985 *or* 12 Kent Way, Byfield, MA 01922

     **Louis DeCaprio**
     4 Illsley Hill Road, West Newbury, MA  01985 *or* 12 Kent Way, Byfield, MA  01922

     **Infobroker, Inc.,** 12 Kent Way, Byfield, MA  01922

     **UIX, LLC,** 12 Kent Way, Byfield, MA  01922

     **United InfoXchange, LLC,** 12 Kent Way, Byfield, MA  01922

715262

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
DEAN BLECHMAN,

                                        Plaintiff,

                - against -

IDEAL HEALTH, INC., TODD STANWOOD,
SCOTT STANWOOD, LOUIS DECAPRIO,
INFOBROKER, INC., UIX, LLC, and UNITED
INFOXCHANGE, LLC,

                                        Defendants.
-------------------------------------------------------------------X

**VERIFIED
COMPLAINT**

Index No. 09- ____

FILED

MAY 2009

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

Plaintiff, DEAN BLECHMAN, as and for his VERIFIED COMPLAINT, by his

attorneys Meyer, Suozzi, English & Klein, P.C., against Defendants, hereby alleges that:

## THE PARTIES

1.      Plaintiff, Dean Blechman ["Dean"], has at all times relevant hereto resided

at Setauket, New York.

2.      Since March 2007 Dean has been a shareholder of record of Defendant

Ideal Health, Inc. ["Ideal"] and one of its directors, and for the period March 2007

through February 29, 2008, was the Chief Executive Officer ["CEO"] of Ideal.

3.      Defendant Ideal is incorporated under the laws of the state of Nevada, with

its principal place of business in Massachusetts, at 12 Kent Way, Byfield, Massachusetts,

is doing business in New York, and has maintained an office in this district in Melville,

New York.

4.      Ideal sells and distributes a complete line of custom test products and

nutritional and vitamin supplements that address health issues ranging from weight loss

to age-related vision problems, bone-loss, joint degeneration, arthritis, digestive difficulty and more, through a network of multi-level marketers. Ideal has sales in, ships product to, conducts meetings in, and has marketers resident in this State.

5. Defendant Todd Stanwood ["Todd"] is a director and officer of Ideal, and one of its Controlling Shareholders.

6. Defendant Scott Stanwood ["Scott"] is a director and officer of Ideal, and one of its Controlling Shareholders.

7. Defendant Louis DeCaprio ["Lou"] is a director and officer of Ideal, and one of its Controlling Shareholders. [Lou, Scott and Todd are referred to collectively as "Individual Defendants" or "Controlling Shareholders" and Plaintiff and the Controlling Shareholders are referred to as collectively as "the Individual Parties".]

8. Defendant Infobroker, Inc. ["Infobroker"] is a Massachusetts corporation, and upon information and belief, its officers are the Individual Defendants.

9. Defendant UIX, LLC is a Nevada limited liability company, and upon information and belief, its officers are the Individual Defendants.

10. Defendant United InfoXchange, LLC is a New Hampshire limited liability company, and upon information and belief, its officers are the Individual Defendants.

11. Upon information and belief, United InfoXchange is the alter ego of the Ideal Health, Inc. and UIX, LLC and is a company used by the Individual Defendants and Ideal to market to the multi-level marketers of Ideal and for sales to such marketers.

12. Defendants are each doing business in New York and transact business in New York, routinely travel to New York, engage counsel in New York to conduct their

2

business, have committed tortious acts in this State, regularly do or solicit business and/or engage in a persistent course of conduct and derive substantial revenue from goods used or consumed or services rendered in the state and expect or should reasonably expect their acts to have consequences in the state and derive substantial revenue from interstate commerce.

### Factual Background

13.    In late 2006/early 2007, Plaintiff was being wooed by the Individual Defendants to become an owner and CEO of Ideal.

14.    Blechman was recruited to be CEO of Ideal by Defendants because they knew he was an experienced leader with decades of experience in the vitamin and nutritional supplement, and natural products business and his excellent reputation in that industry, through the company, Twinlab, also an acknowledged leader in this field. Defendants believed that Blechman's association with Ideal would bring value to Ideal and make it easier for Ideal to recruit marketers and to grow Ideal's business and revenue.

15.    Ideal's business model is to use a network of marketers – called multi-level marketing – to recruit salesmen and customers, rather than making sales through retailers.

16.    Prior to his recruitment as CEO of Ideal, Dean was repeatedly told by the Individual Defendants that their intention was that he would become an "equal partner" with them in Ideal.

17.    The Individual Parties are signatories to a First Amended and Restated Agreement of the Shareholders of Ideal Health, Inc. [the "Shareholder Agreement"], dated as of March 5, 2007, along with two other minority shareholders, which provides,

3

in pertinent part, that the "governing law" for the parties' shareholder agreement is made pursuant to and shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and "Federal Law." This agreement was drafted and negotiated in New York.

18.     In March 2007, Plaintiff Blechman became the CEO of Ideal and a holder of 10% of the outstanding shares of Ideal.

19.     The plain language of the Shareholder Agreement provides that Plaintiff became a 10% owner of Ideal and a "Founder" and that, as a "Founder," Dean, along with the other three Founders (Lou, Todd and Scott), is an owner of Defendant Infobroker and Defendant UIX.

20.     Upon information and belief, Ideal uses Infobroker and UIX to market and manage Ideal.

21.     As of February 29, 2008, Plaintiff Blechman was forced out as CEO of Ideal but remained a director of Ideal, and by agreement increased his shareholdings to 13% of the outstanding shares of Ideal.

22.     As of February 29, 2008, the Individual Parties to this litigation owned the following shares of Ideal:

| NAME OF SHAREHOLDER | NUMBER OF SHARES | PERCENTAGE OWNERSHIP IN IDEAL |
|---|---|---|
| Todd Stanwood | 5,683 | 23.79 |
| Scott Stanwood | 5,683 | 23.79 |
| Louis DeCaprio | 5,683 | 23.79 |
| Dean Blechman | 3,105 | 13.00 |
| TOTAL | 20,154 | 84.37 |

4

23.     At the time of his ouster as CEO of Ideal, in or about February/March 2008, Blechman, through his contacts, introduced Donald Trump and the Trump organization to Ideal. As a result of this introduction, several meetings were held in New York between Ideal and the Trump Organization.

24.     In proposing to Trump that he do business with and license his name to Ideal, upon information and belief, Ideal and the Individual Defendants highlighted Dean's excellent reputation and years of experience in the vitamin and nutritional supplement industry, and his association with Twinlab, which company and the Blechman name were well known.

25.     In March 2009, Ideal entered into a licensing agreement ("Trump Agreement") (through an entity that it owns and controls, TTN, LLC, a Delaware limited liability company), with DSN Licensing LLC (on behalf of Trump). The terms of this agreement are confidential.

26.     After entering into the Trump Agreement, Ideal advised its network of marketers that it expected Ideal's revenue to grow to $1 billion and announced that it was rebranded as The Trump Network.

27.     The Shareholder Agreement provides that a successful party in litigation is entitled to recover his attorney's fees.

28.     In April 2009, Defendant Scott directed Ideal's marketers to place their sales through United InfoXchange's website, "www.uixonline.com", rather than through the Ideal website. Upon information and belief, Ideal also uses United InfoXchange to manage and market for Ideal, and is an alter ego of Ideal and/or UIX.

5

29.     At an Ideal Directors' meeting held on April 13, 2009, Ideal advised Dean that "Infobroker/UIX" is a marketing division of Ideal, used to provide marketing services to TTN, and the payments for such services are being billed to Ideal and/or TTN.

30.     At a Shareholder meeting held on April 30, 2009, when Dean requested information about Ideal's performance in the first quarter, he was asked "why would you want to know that?" and Defendants Ideal, Lou, Todd and Scott refused to answer the question or provide the requested information.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Relief as to Ideal Shares)**
**(as to Defendants Lou, Todd, Scott and Ideal)**

31.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

32.     From January 2007-March 2009, the Individual Defendants repeatedly told Plaintiff that he would become an "equal partner" with defendants Lou, Todd and Scott.

33.     The Individual Defendants also represented to Plaintiff that, upon the successful completion of the Trump agreement, due to his extraordinary and successful effort in bringing the Trump opportunity to Ideal he would become an equal shareholder in that company, owning an equal amount of its shares as do Todd, Scott and Lou.

34.     Throughout the discussions and written communications with the Trump organization and its principals, Defendant Ideal and the Individual Defendants represented to Trump and Dean that Plaintiff was an equal shareholder in Ideal with the Individual Defendants, or would be after the Trump agreement was consummated.

35.     Dean was told by Defendant Lou that, upon the successful completion of the Trump Agreement, Dean's stock holdings in Ideal would be increased so that Trump, Dean, Todd, Lou and Scott would be equal shareholders.

36.     Ideal, Lou, Scott and Todd confirmed these oral representations in writing.

37.     Dean was copied on writings sent to the Trump organization, and on numerous drafts thereof, which contained and confirmed these representations that Dean was an equal shareholder with Defendants Todd, Scott and Lou, and which were signed by Lou as President of Ideal.

38.     Upon information and belief, for example, a letter sent on Ideal's letterhead from Lou as President of Ideal to the Trump Organization, says, in pertinent part:

> "2. Equity stake: seventeen percent (17%) in Ideal Health Inc.
> (to be equal to that of the four largest shareholders in the
> company: Todd Stanwood, Scott Stanwood, Lou DeCaprio
> and Dean Blechman."

39.     Defendants Todd, Scott, Lou and Ideal prepared and/or were copied on drafts and various versions of the proposals made by Ideal to the Trump organization, each of which represented that Dean was an equal shareholder with Todd, Scott and Lou, and Lou, Todd and Scott did not object to such representations.

40.     Plaintiff understood from these representation that once the Trump Agreement was finalized he would become a equal shareholder of Ideal with Defendants Todd, Scott and Lou.

41. It was reasonable for Dean to rely upon the representations made both orally and in writing by the Defendants Ideal, Todd, Scott and Lou that he would become an equal shareholder after the successful consummation of the Trump Agreement.

42. On or about March 4, 2009, the Trump Agreement was executed through a subsidiary, TTN, LLC, after which Ideal re-branded itself as "The Trump Network" ("TTN").

43. Notwithstanding the repeated promises, both oral and in writing, that Dean would become an equal shareholder, Defendants Ideal, Todd, Scott and Lou have failed and refused to issue or transfer shares of stock to Dean so as to make him an equal shareholder in Ideal.

44. Defendants Ideal, Todd, Scott and Lou have denied that Dean is an equal shareholder in Ideal.

45. Plaintiff has reasonably relied to his detriment upon the oral and written representations of Todd, Scott and Lou, and Ideal, that he was to become an equal shareholder.

46. Plaintiff has demanded that Ideal stock be re-distributed so as to reflect his equal equity holdings, which demand has been refused by Defendants Ideal, Lou, Todd and Scott.

47. Defendants are estopped from contending that Plaintiff is not an equal shareholder in Ideal by virtue of their written confirmations of the foregoing oral representations, and holding Dean out to others, including Trump, as an equal shareholder, and making such representations in order to receive the Trump license.

8

48.   Plaintiff has been harmed by the failure to transfer, issue or re-distribute Ideal shares to him.

49.   Defendants Ideal, Todd, Lou and Scott precluded Dean from voting all of his shares at the April 30, 2009 shareholder meeting, limiting him to voting only 13% of the outstanding shares of Ideal.

50.   In March 2008, Defendants Todd, Scott, Lou and Dean collectively owned 84.37% of the shares of Ideal.

51.   In June 2008, Defendants Todd, Scott, Lou and Dean represented to Trump that after the deal was consummated, Lou, Todd, Scott, Trump and Dean would collectively own 85% of the shares in Ideal (*i.e.,* 17% each).

52.   Lou, as President of Ideal and on behalf of Todd, Scott and Dean had represented that, along with Donald Trump, they would each own 17% of the shares of Ideal, for a total of 17%, but Trump bargained for other terms instead of obtaining direct equity holding in Ideal.

53.   Accordingly, Lou, Todd, and Scott, and Dean each own 21.25% of the shares of Ideal, in other words one-quarter each of the 85% holding.

54.   Plaintiff has made a demand that stock certificates be reissued so as to transfer to him sufficient shares so that he would become an equal shareholder, that is, 21.25% of the Ideal stock, with Lou, Todd and Scott each owning 21.25%.

55.   Despite due demand for the issuance or transfer of additional shares so that his holdings become equal with Lou, Todd and Scott as promised and represented to Dean in writing, Defendants have failed and refused to issue or transfer such Ideal shares.

9

56.    Defendants Todd, Scott, Lou and Ideal have taken the position that they are not required to transfer any further shares to Dean, and that Dean owns only 13% of the shares of Ideal.

57.    Dean has taken the position that he is an equal shareholder with Lou, Todd, and Scott in Ideal and that each owns 21.25% of the shares of Ideal, which the Defendants deny.

58.    There is a genuine, justiciable controversy concerning the number of shares owned by Dean (as well as by the Individual Defendants) in Ideal.

59.    The court should issue a judgment declaring the rights and obligations of the respective parties in Ideal, and declare that Dean is an equal shareholder in Ideal, holding 21.25% of the shares of Ideal, and that Lou, Todd and Scott each also own 21.25% of the shares of Ideal, or 5,038.5 shares each.

60.    The court should further direct defendants to take all steps necessary to effectuate the transfer of shares from Lou, Todd and Scott to Dean, and direct the Corporation to issue new stock certificates to the parties, so that they are equal shareholders, each owning 21.25% of the shares of Ideal (5,038.5 shares each).

61.    The court should further direct that the transfer of shares be made effective as of March 4, 2009.

62.    Plaintiff is entitled to an award of attorney's fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Relief as to Infobroker Shares)
### (against Defendants Lou, Todd, Scott and Infobroker)

63.    Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

64.    The Shareholder Agreement contains a "no contest" clause.

65.    Defendants Lou, Todd, Scott and Infobroker have taken the position that Dean is not an owner of Defendant Infobroker, notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" and that the "Founders" own Infobroker.

66.    Defendants Lou, Todd, Scott, and Infobroker have failed and refused to issue any stock in Infobroker to Dean notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" and that the "Founders" own Infobroker.

67.    Defendants Lou, Todd, Scott, and Infobroker  have failed and refused to issue any distributions or dividends from Infobroker to Dean notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" and that the "Founders" own Infobroker.

68.    Defendants Lou, Todd, Scott, and Infobroker have failed and refused to provide any financial or other information to Dean notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" and that the "Founders" own Infobroker.

69.    Defendants Lou, Todd, Scott, Ideal and Infobroker have failed and refused to provide Dean with agreements between Ideal and Infobroker, the internal documentation (such as shareholder agreements) of Infobroker, or any information concerning payments to or charges by Lou, Todd and Scott regarding Infobroker,

11

notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" and that the Founders own Infobroker, and Dean is a shareholder and director of Ideal.

70.     There is a real and justiciable controversy as to whether Dean is a shareholder in Infobroker.

71.     The court should issue a judgment declaring the rights and obligations of the respective parties, and declare that Dean is an equal shareholder in Infobroker, holding 25% of the shares of Infobroker, and that Lou, Todd and Scott also each own 25% of the shares of Infobroker.

72.     The court should further direct defendants, Lou, Todd, Scott and Infobroker to take all steps necessary to effectuate the transfer of shares from Lou, Todd and Scott to Dean, and direct the Corporation to issue new stock certificates to the parties, so that Dean owns 25% of the shares of Infobroker, and is an equal shareholder with Lou, Todd and Scott therein.

73.     Plaintiff is entitled to an award of attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Relief as to UIX, LLC Membership Interest/Shares)
### (against Defendants Lou, Todd, Scott and UIX)

74.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

75.     Notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" of Ideal and that the "Founders" own UIX, LLC, Lou, Todd, and Scott have taken the position that Dean is not an owner of UIX, LLC.

12

76.     Notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" of Ideal and that the "Founders" own UIX, LLC, Lou, Todd, and Scott have failed and refused to issue to Dean shares or membership interests in UIX, LLC.

77.     Defendants Lou, Todd and Scott have taken the position that Dean is not an owner of UIX, LLC.

78.     Dean has taken the position that he is an owner of UIX, LLC, pursuant to the plain language of the Shareholder Agreement.

79.     There is a real and justiciable controversy as to whether Dean is an owner of UIX, LLC.

80.     Defendants Lou, Todd, Scott, Ideal and UIX, LLC have failed and refused to provide Dean with agreements between Ideal and UIX, LLC, the internal documentation (such as operating agreements) of UIX, LLC, or any information concerning payments to or charged by Lou, Todd and Scott regarding UIX, LLC, notwithstanding that the Shareholder Agreement provides that Dean is a "Founder" and that the "Founders" own UIX, LLC, and Dean also is a shareholder and director of Ideal.

81.     The court should issue a judgment declaring the rights and obligations of the respective parties, and declare that Dean is an equal shareholder, holding 25% of the shares/membership interest of UIX, LLC and that Lou, Todd and Scott also each own 25% of the shares of UIX, LLC.

82.     The court should further direct Defendants to take all steps necessary to effectuate the transfer of shares from Lou, Todd and Scott to Dean, and direct UIX, LLC to issue new stock certificates or other documentation reflecting membership interest

13

therein to the parties, so that Dean owns 25% of UIX, LLC, and is an equal owner along with Lou, Todd and Scott therein.

83.     Plaintiff is entitled to an award of attorney's fees and costs.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Constructive Trust)
### (against Defendants Lou, Todd and Scott)

84.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

85.     Upon information and belief, Defendants Todd, Scott and Lou have received distributions as owners of Infobroker, UIX, LLC, and United InfoXchange in 2007 through 2009.

86.     Dean has received no distributions from Ideal, Infobroker, UIX, LLC and United InfoXchange.

87.     As an owner of Defendants Ideal, Infobroker and UIX, LLC and the alter ego United InfoXchange, Dean is entitled to distributions on the same basis as the other owners.

88.     Upon information and belief, the agreements concerning the owners of Defendants Ideal, UIX, LLC, Infobroker and United InfoXchange all are governed by Massachusetts law, which is also the principal place of business of these companies.

89.     Any distributions made by Defendant Infobroker to Defendants Lou, Todd and Scott since March 2007 are being held by them as fiduciaries, as the shareholders of a closely held Massachusetts corporation owe each other fiduciary duties, including the utmost good faith and loyalty.

14

90.     Any distributions made by Defendant UIX to Defendants Lou, Todd and Scott since March 2007 are being held by them as fiduciaries, as the owners of a closely held business with its principal place of business in Massachusetts is governed by Massachusetts law, which provides that such owners owe each other fiduciary duties, including the utmost good faith and loyalty.

91.     Any distributions made by Defendant United InfoXchange to Defendants Lou, Todd and Scott are being held by them as fiduciaries, as the owners of a closely held business with its principal place of business in Massachusetts is governed by Massachusetts law, which provides that such owners owe each other fiduciary duties, including the utmost good faith and loyalty.

92.     Any distributions made by Defendant Ideal to Defendants Lou, Todd and Scott are being held by them as fiduciaries, as the owners of a closely held business with its principal place of business in Massachusetts is governed by Massachusetts law, which provides that such owners owe each other fiduciary duties, including the utmost good faith and loyalty.

93.     As fiduciaries, Defendants Lou, Todd and Scott are holding Dean's share of the distributions each has received from UIX, United InfoXchange, Ideal and Infobroker, as well as any payments made by Ideal to them as *de facto* dividends.

94.     The court should impose a constructive trust on all shares in and monies received from Defendants Ideal, Infobroker, UIX, and United InfoXchange that rightfully belong to Plaintiff.

95.     Plaintiff is entitled to an award of attorney's fees and costs.

15

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (against defendants Lou, Todd and Scott)

96.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

97.     Defendants Todd, Scott and Lou each have been enriched by wrongfully retaining distributions from UIX, United InfoXchange, Ideal and Infobroker that belong to Dean.

98.     Defendants Todd, Scott and Lou each have been enriched by wrongfully keeping and refusing to transfer shares in Defendant Ideal and Defendant Infobroker or membership interests in Defendant UIX to Dean.

99.     Defendants Todd, Scott and Lou each have been enriched by wrongfully keeping and refusing to transfer shares or membership interests in Defendant United InfoXchange to Dean, because InfoXchange is an alter ego of Ideal, UIX, LLC and/or Infobroker.

100.    The foregoing conduct has harmed and is at Plaintiff's expense.

101.    It is against equity and good conscience to permit Defendants Lou, Todd and Scott to keep such property, including the shares, membership interest and distributions that belong to Dean.

102.    Defendants Lou, Todd and Scott should be directed to disgorge Dean's share of the distributions in Defendant UIX, United InfoXchange and Infobroker that were wrongfully distributed to them, and pay such to Dean, with interest from the date that the distributions were made to each.

16

103.   Defendants Lou, Todd and Scott should be directed to disgorge Dean's share of the *de facto* dividends paid by Defendant Ideal that were wrongfully distributed to them, and pay such to Dean, with interest from the date that the distributions were made to each.

104.   Defendants Lou, Todd, and Scott should be directed to transfer the shares in Ideal and Infobroker, and membership interest or shares in UIX, LLC and United InfoXchange LLC they have received and which rightfully belong to Dean.

105.   Plaintiff is entitled to an award of attorney's fees and costs.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Accounting)

106.   Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

107.   Defendants are fiduciaries to Plaintiff as a shareholder/owner of each.

108.   The court should direct defendants to account for the distributions, compensation and all payments made to Lou, Todd and Scott by Ideal, UIX, United InfoXchange and Infobroker.

109.   The court should direct defendants to account for the distributions, compensation and all other payments made to UIX, United InfoXchange and Infobroker by Ideal.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Inspection of Books and Records of Ideal, UIX, United InfoXchange, and Infobroker)

110.   Plaintiff repeats and realleges the allegations of the foregoing paragraphs as though set forth in full herein.

111.   Plaintiff, as a director and shareholder of Ideal has a right to review the books and records of Ideal in order to carry out his obligation owed to the Corporation.

112.   Plaintiff as an owner of UIX and Infobroker has a right to inspect the books and records of those entities.

113.   Plaintiff has made a demand for information and to review various records of Ideal, UIX, and Infobroker, which request has been refused, denied and/or ignored.

114.   Plaintiff has a right to review the agreements between and among Defendants insofar as they are related to the Defendant entities, and to be provided with all information necessary to determine the fairness of the related-party transactions and to enable Plaintiff to exercise his fiduciary obligations under Massachusetts law, because, *inter alia*, he is a Director and Shareholder in Ideal, and a "Founder."

115.   The court should direct that Ideal, UIX, and Infobroker make their records available to Plaintiff and his agents for a review and inspection, as well as the records of United InfoXchange, which entity is an alter ego of defendants.

WHEREFORE, the Court should enter a judgment:

a.   on the first cause of action, declaring the number of shares and percentage of shares owned by each party to this action in Ideal Health, Inc.;

18

b.   on the second cause of action, declaring the number of shares and percentage of shares owned by each party to this action in Infobroker, Inc.;

c.   on the third cause of action, declaring the membership interest and percentage of same owned by each party to this action in UIX, LLC;

d.   on the first cause of action, directing the parties to take all steps necessary to effectuate the transfer of shares in Ideal Health, Inc. to Dean Blechman so that he is an equal shareholder as of March 4, 2009, holding 21.25% of the shares of Ideal, and that Lou, Todd and Scott also each own 21.25% of the shares of Ideal;

e.   on the second cause of action, declaring the rights and obligations of the respective parties, including that Dean Blechman is an equal shareholder, holding 25% of the shares of Infobroker, Inc., and that Lou, Todd and Scott also each own 25% of the shares of Infobroker, Inc., directing defendants to take all steps necessary to effectuate the transfer of shares in Infobroker from Lou, Todd and Scott to Dean, and directing the Corporation to issue new stock certificates to the parties, so that Dean owns 25% of the shares of Infobroker, and is an equal shareholder with Lou, Todd and Scott;

f.   on the third cause of action, declaring that Dean is an equal shareholder, holding 25% of the shares/membership interest of UIX, LLC and that Lou, Todd and Scott also each own 25% of the shares

19

of UIX, LLC, directing Defendants to take all steps necessary to effectuate the transfer of shares in UUIX, LLC from Lou, Todd and Scott to Dean, and directing UIX, LLC to issue new stock certificates or other documentation reflecting membership interest therein to the parties, so that Dean owns 25% of UIX, LLC , and is an equal owner along with Lou, Todd and Scott;

g.     on the fourth cause of action, imposing a constructive trust on all shares in and monies received from Defendants Ideal, Infobroker, UIX, and United InfoXchange that rightfully belong to Plaintiff;

h.     on the fifth cause of action, directing Defendants Lou, Todd and Scott to disgorge monies received as distributions from Ideal, United InfoXchange, UIX and Infobroker, which should been paid to Dean, with interest from the date received by Defendants, and Plaintiff's proportional share of *de facto* dividends;

i.     on the fifth cause of action, directing Lou, Todd, and Scott to transfer the shares in Ideal and Infobroker, and membership interest or shares in UIX, LLC they have received that rightfully belong to Plaintiff;

j.     on the fifth cause of action, directing defendants to account for the distributions, compensation and all payments made to Lou, Todd and Scott by Ideal, UIX and Infobroker;

k. on the seventh cause of action, directing defendants to permit an inspection of the books and records of Ideal, Infobroker and UIX; and directing that Ideal, UIX, and Infobroker make their records available to Plaintiff and his agents for a review and inspection, as well as the records of United InfoXchange, which entity is an alter ego of defendants;

l. awarding Plaintiff his reasonable attorney's fees and costs; and

m. for such other and further relief as the court deems just and proper and necessary to give Plaintiff complete relief in this action, with interest, costs and attorney's fees as permitted by law or agreement.

Dated: Garden City, New York
May 18, 2009

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _Erica Garay_

Erica B. Garay, Esq.
*Attorneys for Plaintiff*
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
516-741-6565

21

715166

## VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NASSAU  )

      **DEAN BLECHMAN**, duly sworn, deposes and says:

    1.    I am the plaintiff in the within action.

    2.    I have read the foregoing VERIFIED COMPLAINT.

    3.    The same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. The basis for those matters stated upon information and belief is review of records and discussions with others.

                              **DEAN BLECHMAN**

Sworn to before me this
__18__ day of May, 2009

             Notary Public

ERICA B. GARAY
Notary Public, State Of New York
No. 02GA4952136
Qualified In Suffolk County
Commission Expires June 12, 2011

715870

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------X

DEAN BLECHMAN,

Plaintiff,

- against -

IDEAL HEALTH, INC., TODD STANWOOD,
SCOTT STANWOOD, LOUIS DECAPRIO,
INFOBROKER, INC., UIX, LLC, and UNITED
INFOXCHANGE, LLC,

Defendants.

------------------------------------------------------------------X

**PLAINTIFF'S FIRST
REQUEST FOR THE
DISCOVERY AND
PRODUCTION OF
DOCUMENTS
DIRECTED AT ALL
DEFENDANTS**

Index No. 09 - 19409

**PLEASE TAKE NOTICE** that, pursuant to CPLR 3120, Plaintiff, by his attorneys, Meyer, Suozzi, English & Klein, P.C., hereby requests that Defendants produce for inspection and copying the documents specified below at the offices of Meyer, Suozzi, English & Klein, P.C., 990 Stewart Avenue, Garden City, New York 11530 within 20 days of the service hereof:

## INSTRUCTIONS

A.    Each of the following document demands is continuing in nature. Accordingly, if subsequent to serving an answer to any of the Demands or any part thereof, each Defendant, or any other person on such Defendant's behalf, obtains or becomes aware of additional information pertaining to such Demands, Defendant is required, pursuant to CPLR 3101(h), to provide, by way of supplemental answers thereto, all such information that will augment or otherwise modify the previous answer.

B.    In answering these Demands, Defendants should furnish all documents and information which are within each Defendant's possession, custody or control, including

information in the possession of Defendant's attorneys, representatives, employees, agents or investigators, or any other person acting or purporting to act on Defendant's respective behalf. As to any document herein requested that was but is no longer in a Defendant's possession, custody or subject to Defendant's control, state specifically what disposition was made of it, the date such disposition occurred, and the circumstances of such disposition.

C.     Should Defendant object to any Demand in whole or in part, state the particular Demand to which Defendant objects and the precise grounds for objection in sufficient detail to allow Plaintiff to evaluate and respond to the objection. No part of any Demand shall be left unanswered merely because an objection is interposed to another part of that Demand.

D.     Should you claim any portion of any responsive document to be privileged, you are directed to produce the non-privileged portion of the document, indicating the date thereof, the identity of each person who prepared, produced or reproduced, or who received copies of the document, and the type of document (*e.g.*, letter, memorandum, e-mail, etc.), with the privileged portion thereof redacted, and to state in writing:  (1) the subject matter of the document, (2) a description of the document, such as by title, file number of other identifying mark or code, (3) the custodian and location of the document by room, building, city and state, (4) the type of privilege claimed or other reason for withholding the document, and (5) all of the circumstances upon which you base your claim of privilege or otherwise withhold the document. Should you withhold information based on a claim that it is privileged or subject to protection as trial preparation material,

2

Defendant shall make the claim expressly and shall describe the nature of the information or communication not produced or disclosed in a manner that, without revealing information that is privileged or protected, will enable Plaintiff and the Court to assess the applicability of the privilege or protection, including each and every fact or basis on which Defendant claim the privilege or protection, including, with respect to oral communications, the date, general subject matter, the identity of all parties to the information communication and the identity of all persons who made or heard the communication.

      E.     These Demands should be read, interpreted and responded to in accordance with the definitions set forth below.  To the extent any documents produced were generated on a computer, all metadata for such documents should be produced.

## DEFINITIONS

      1.    As used herein, the following definitions shall apply:

      A.    "Document" shall mean any document or other material, in the broadest sense permissible under applicable laws and rules of court, and shall include, without limitation, any written (whether by hand or otherwise), typed, printed, photographed, recorded, graphic or other matter, whether produced, reproduced, compiled, or stored on paper, cards, tapes, disks, film, computer storage devices or other media, of any kind or nature whatsoever--including, but not limited to, accounts, account statements, accounting records, advertisements, agendas, agreements, annual reports, applications, appointment calendars, backup tapes, bills, books, bookkeeping entries,

3

budgets, bulletins, cartridges, cassettes, charts, checks (front and back), check stubs, circulars, communications (of any tangible kind or nature whatsoever), computer chips, computer printouts, contracts, correspondence, e-mails, data compilations, diaries, directives, disks and drives, diskettes, documents of title, drawings, electric or electronic recordings, electronic mail, files, financial statements, graphs, interviews, invoices, ledgers, letters, logs, management letters, memoranda, messages, microfiche, microfilm, minutes, minute books, newspapers and other periodicals (and/or written accounts appearing therein), notations, notes, notebooks, opinions, orders, pamphlets, papers, photographs, posters, press releases, printouts, proxy statements, receipts, records, reports, statements, statements of account, statistics, studies, tapes, telefacsimiles ("faxes"), telegrams, telephone logs, telephone messages, teletypes, telexes, time sheets, transcripts, translations, transliterations, travel vouchers, trip reports, videotape, vouchers, working papers, work papers, worksheets and writings--and also includes, but is not limited to, originals, copies (with or without notes or changes thereon), alterations, amendments, compilations, modifications, digests, drafts, final versions, summaries, and transcripts, whether or not presently in the possession, custody or control of Defendant, which are either known to exist or may be located or discovered by the exercise of reasonably diligent efforts.

B.   "Concerning" shall mean and include: referring to, relating to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, responding to, supporting, contradicting, constituting (in whole or part), and/or being a draft, copy or summary of (in whole or in part).

4

C.      Wherever the word "and" appears herein, it shall be read and applied so as to include the word "or," and wherever the word "or" appears herein, it shall be read and applied so as to include the word "and."

D.      Wherever the word "any" appears herein, it shall be read and applied so as to include the word "all," and wherever the word "all" appears herein, it shall be read and applied so as to include the word "any."

E.      The singular form of any word appearing herein shall embrace, and be read and applied as embracing, the plural, and the plural form of any word appearing herein shall embrace, and be read and applied as embracing, the singular, except as otherwise expressly stated herein.

F.      The terms "Plaintiff" and "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party shall mean the party and, where applicable, her or his employees, agents, attorneys or persons under their control.

G.      The term "Complaint" means the Complaint served herein.

H.      "Answer" means the answer served herein by You.

I.      The term "You" or "Your" shall refer to each Defendant.

J.      "Dean" or "Blechman" shall refer to Plaintiff.

K.      "Ideal" shall refer to defendant Ideal Health, Inc.

L.      "UIX" shall refer to defendant UIX, LLC.

M.      "Infobroker" shall refer to defendant Infobroker, Inc.

N.      "InfoXchange" shall refer to defendant United InfoXchange LLC.

O.      "TTN" shall refer to TTN, LLC.

P.      "Blechman Employment Agreement" shall refer to the Employment Agreement between Ideal and Dean dated on or about March 8, 2007.

Q.      "Blechman Separation Agreement" shall refer to the Agreement and Release between Blechman and Ideal dated on or about February 29, 2008.

R.      "Change of Control Agreement" of March 2007 shall refer to the Change of Control agreement concerning Blechman dated on or about March 2007.

S.      "Shareholder Agreement" shall refer to the First Amended and Restated Shareholder Agreement of March 2007 concerning Ideal.

T.      "Trump/Ideal License" shall refer to the license between DSN Licensing LLC and TTN, LLC, dated on or about March 4, 2009.

U.      "Ideal/TTN License" shall refer to the license between Ideal and TTN, LLC dated as of March 4, 2009.

V.      "TTN Operating Agreement" shall refer to the "Limited Liability Operating Agreement of TTN, LLC" dated as of March 4, 2009.

W.      "Lou," "Todd," and "Scott" refer to the Defendants as defined in the Complaint.

## DOCUMENT DEMANDS

1.      For Ideal, produce a copy of the following documents for the period 2007 to the present:

    a.   all financial statements

6

    b.  all tax returns, including copies of all K-1s furnished to the owners of the company

    c.  all W-2, 1099, or similar documentation provided to each shareholder

    d.  documents that reflect all invoices received or payments charged to Ideal by Scott, Todd and/or Lou

    e.  documents that reflect all payments made to Lou, Todd, and/or Scott, including compensation, salary, bonus, and reimbursed expenses

    f.  all shareholder agreements, certificates of incorporation, by-laws and minutes and agendas of all meetings of the shareholders and directors since 2007 and Board and Shareholder resolutions and consents

    g.  all stock certificates and stock ledgers and other documents reflecting stock ownership in Ideal

2.    For UIX, produce a copy of the following documents for the period 2007 to the present:

    a.  all financial statements

    b.  all tax returns, including copies of all K-1s furnished to the owners of the company

    c.  all W-2, 1099, or similar documentation provided to UIX's owners, including Scott, Todd and Lou

    d.  documents that reflect all invoices received or payments charged to Ideal by Scott, Todd and/or Lou

7

    e. documents that reflect all payments made to Lou, Todd, and/or Scott, including compensation, salary, bonus, and reimbursed expenses

    f. all Operating Agreements, agreements among or between any of the members, articles of organization, minutes and agendas for all directors' meetings and member meetings, and produce documents that reflect the ownership of the Company

3.    For Infobroker, produce a copy of the following documents for the period 2007 to the present:

    a. all financial statements

    b. all tax returns, including copies of all K-1s furnished to the owners of the company

    c. all W-2, 1099, or similar documentation provided to Infobroker's owners, including Scott, Todd and Lou

    d. documents that reflect all invoices received or payments charged to Ideal by Scott, Todd and/or Lou

    e. documents that reflect all payments made to Lou, Todd, and/or Scott, including compensation, salary, bonus, and reimbursed expenses

    f. all shareholder agreements, certificates of incorporation, by-laws and minutes and agendas of all meetings of the shareholders and directors since 2007, and Board and Shareholder resolutions and consents, including ledger

8

    g. all stock certificates and stock ledgers and other documents reflecting stock ownership in Infobroker

4. For InfoXchange, produce a copy of the following documents for the period 2007 to the present:

    a. all financial statements

    b. all tax returns, including copies of all K-1s furnished to the owners of the company

    c. all W-2, 1099, or similar documentation provided to InfoXchange's owners, including Scott, Todd and Lou

    d. documents that reflect all invoices received or payments charged to Ideal by Scott, Todd and/or Lou

    e. documents that reflect all payments made to Lou, Todd, and/or Scott, including compensation, salary, bonus, and reimbursed expenses

    f. all Operating Agreements, agreements among or between any of the members, articles of organization, minutes and agendas for all directors' meetings and member meetings, and produce documents that reflect the ownership of the Company

5. Produce all communications, including but not limited to, between and among any of the Defendants, and/or with their counsel and/or with their accountants concerning the following:

    a. the subject matter of the Complaint

    b. any defense to the Complaint

c. Dean Blechman, including his hiring, his "separation" from Ideal, his ownership interest in any Defendant entity and his claims of ownership in any entity

d. Dean's interest in each of the Defendant entities

e. drafting of the Blechman Employment Agreement, Blechman Separation Agreement, Change of Control Agreement, Shareholder Agreement, Trump/Ideal License, Ideal/TTN License, and/or TTN Operating Agreement

f. Shareholder and/or Director meetings held since January 2007

g. the Trump Agreement, and all meetings related thereto, including communications related to Dean and his introduction of the Trump opportunity

6.   Produce documents and communications that relate to the subject matter of the Complaint.

7.   Produce all drafts of the Shareholder Agreement and communications relating thereto.

8.   Produce all drafts of the Employment Agreement and communications relating thereto.

9.   Produce all drafts of the Separation Agreement and communications relating thereto.

10.   Produce all drafts of the Change of Control Agreement and communications relating thereto.

10

11.    Produce all drafts of the Ideal/TTN Operating Agreement and communications relating thereto.

12.    Produce all drafts of the Ideal/TTN License and communications relating thereto.

13.    Produce all communications between or among Ideal, its directors and/or shareholders since March 8, 2007 relating to the matters raised in the Complaint, defenses thereto, and/or Your Answer.

14.    Produce all communications between or among Defendants concerning Plaintiff's ownership in any Defendant entity.

15.    Produce the general ledger of Ideal, UIX, InfoXchange and Infobroker for the years 2007 to the present.

16.    With respect to Ideal, Infobroker, UIX and InfoXchange, produce all documents and communication concerning the allocation of General and Administrative expense among the Defendant entities, and how the allocation is made for the years 2007 to the present, including communications with Your accountant(s).

17.    With respect to the management fee charged by Infobroker to Ideal for the years 2007 to the present produce all documents and communications concerning (a) its computation and (b) the services provided by Infobroker.

18.    Produce all organization charts for the Defendant entities mentioning any of the parties since 2007.

19.    Produce all job descriptions for positions at the Defendant entities.

11

20.    Produce (a) all agreements between or among Defendants and (b) all communications concerning such agreements since 2007.

21.    Produce all documents concerning the purchase of Lyn Burke's shares in Ideal and communications relating thereto.

22.    Produce all emails and text messages sent to or received from Blechman by any Defendant or its counsel since 2007.

23.    Produce all emails and text messages concerning Blechman by any Defendant or its counsel since 2007.

24.    Produce all documents and communications since March 2007 concerning the use of UIX and/or United InfoXchange to sell or market Ideal's products.

Dated:  Garden City, New York
        May 19, 2009

                                MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

                                By: _____
                                       Erica B. Garay, Esq.
                                *Attorneys for Plaintiff*
                                990 Stewart Avenue, Suite 300
                                P.O. Box 9194
                                Garden City, New York  11530-9194
                                516-741-6565

715595

12